UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

RANDY MOORE,                          )
                                      )
        Plaintiff,                    )        Civil Action No. 7: 20-160-DCR
                                      )
V.                                    )
                                      )
KILOLO KIJAKAZI, Acting               )        **MEMORANDUM OPINION**
Commissioner of Social Security,      )            **AND ORDER**
                                      )
        Defendant.                    )

                    ***  ***  ***  ***

        The parties have filed cross-motions for summary judgment regarding Plaintiff Randy

Moore's challenge to the Social Security Administration's final decision denying his

application for benefits.  [Record Nos. 10, 14]  Moore asserts that the Administrative Law

Judge's ("ALJ") decision is not supported by substantial evidence.  More specifically, he

contends that the ALJ failed to give proper weight to the opinions of Dr. Thomas Smith and

Dr. John Gilbert and failed to properly articulate her reasoning for finding their opinions

unpersuasive.  [Record No. 11]  Moore further asserts that the ALJ erred by not finding that

the combined effects of his impairments were of sufficient severity to meet a listed impairment

in 20 C.F.R. part 404, Subpart P, Appendix 1.  Conversely, the Acting Commissioner of Social

Security argues that substantial evidence supports the final decision denying the benefits

sought by Moore.  [Record No. 14]

        Having fully reviewed the record, the Court concludes that the Acting Commissioner's

decision is supported by substantial evidence and that the ALJ did not err in rendering her

- 1 -

decision. Accordingly, the Acting Commissioner's decision will be affirmed. The relief requested by Moore will be denied.

## I.

Moore applied for Title XVI Supplemental Security Benefits ("SSI") on March 8, 2018. [Administrative Transcript, "Tr." 277] Moore previously filed applications for disability benefits on March 7, 2000, February 25, 2003, October 28, 2004, and September 21, 2007. [Tr. 113] All prior applications were denied. [Tr. 113-14] In his current application, Moore asserts a disability onset date of November 27, 1997. [Tr. 277] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. [Tr. 149, 171] Moore then requested an administrative hearing before an ALJ. [Tr. 191] The parties appeared telephonically for the hearing on June 26, 2019. [Tr. 87-109] Thereafter, ALJ Melissa Hammock issued a written opinion, concluding that Moore was not disabled. [Tr. 63-86] The Appeals Council subsequently denied Moore's request for review. [Tr. 5] Accordingly, Moore has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.

Moore was born in 1967 and has a 12th grade education. [Tr. 77, 425] He last worked in 1997 as a truck driver, but he stopped due to his alleged disability. [Tr. 425] However, Moore told a consultative examiner that he was laid off in 1997. [Tr. 298] There is some indication that in the intervening years, including as recently as 2015, he worked as a farm hand for cash. [Tr. 78, 1008] Moore asserts that he is disabled because of poor vision in addition to back, neck, shoulder, leg, and nerve pain. [Tr. 298]

As noted above, Moore previously filed applications for disability benefits on March 7, 2000, February 25, 2003, October 28, 2004, and September 21, 2007.  [Tr. 113]  But all of his prior requests were denied.  [Tr. 113-14]  ALJ Rosanne M. Drummer issued an unfavorable decision regarding the September 21, 2007, application for benefits, concluding that Moore was able to perform light work and he was not disabled.

Moore was involved in a car accident on May 30, 2015, which contributed to his to knee, shoulder, and back pain.  [Tr. 999]  On October 22, 2015, an MRI was performed of Moore's spine, brain, and shoulder.  [Tr. 1007]  The MRI of his spine showed wedge compression, convex scoliosis, disk bulging and herniation, spinal stenosis, and a radial tear at C6-7.  [Tr. 1007]

Moore visited Paintsville Primary Care on November 11, 2015, complaining of headaches, neck and back pain as well as numbness and aching in his arms.  [Tr. 1003-04]  Doctors assessed acute cervical strain with radiculopathy, thoracic pain, right shoulder pain, and lumbar pain with radiculopathy.  He followed-up on December 12, 2015, complaining of neck pain and headaches.  [Tr. 1005]  Dr. Smith, a physician at Paintsville Primary Care, assessed the same problems and advised Moore to apply heat to his neck and limit his lifting to less than 10 pounds.  [Tr. 1005]  On August 20, 2016, Dr. Smith stated that Moore was likely 30% disabled, maybe more disabled based on the MRI, but he needed to be referred to a neurosurgeon for an opinion.  [Tr. 1008]

Dr. Smith also conducted a "medical report from a treating physician" on April 21, 2019.  He explained that physical examination revealed nerve root impingement in Moore's spine following neck surgery and that he had a herniated disc that had not been the subject of the prior operation.  [Tr. 975]  Smith noted that Moore had neck, back, and arm pain; and had

- 3 -

issues standing, sitting, lifting, walking, bending, driving, performing household and lawn work. [Tr. 975]  He indicated that Moore should limit lifting, pushing, and pulling to less than 10 pounds.  [Tr. 977]  Smith further concluded that Moore's chronic cervical pain, chronic lumbar pain, and herniated lumber disc would likely be permanent.  [Tr. 977]  Dr. Smith checked that Moore could occasionally lift and/or carry less than 10 pounds; stand or walk less than 3 hours; and had a limited degree to push or pull.  [Tr. 979]  He also checked that Moore could never climb, balance, stoop, kneel, crouch or crawl; and had limited ability to reach, handle, finger, or feel because Moore had herniated discs in his neck and back that prevented all of the listed activities.  [Tr. 979]  Smith relied on MRI results from October 9, 2018, that indicated nerve root impingement, foraminal encroachment, disc bulging, and canal stenosis. [Tr. 978]

Moore also sought treatment from Dr. Chad Carol, at Paintsville Primary Care, and registered nurses, Debra Brock and Sarah Patrick following an ATV accident on June 3, 2018. [Tr. 1058-1061] Moore saw Brock on October 3, 2018, where he complained of neck pain and stiffness, cervical and lumbar pain, and low back pain.  [Tr. 1058]  A physical examination indicated tenderness and decreased range of motion in Moore's neck and back.  [Tr. 1058]  He later saw Patrick and again complained of neck and back pain.  Physical examination revealed tenderness and limited range of motion.  [Tr. 1059] On March 21, 2019, Dr. Carroll concluded that Moore had a disability rating of 100% because of neck and back injuries related to the ATV accident and which caused severe pain and limited range of motion.  [Tr. 1061]

From 2015 to 2019, Moore also saw Dr. Gilbert at Spine & Brain Neurosurgical Care. Dr. Gilbert examined Moore on January 25, 2016, for neck, back, shoulder, and leg pain, along with headaches.  [Tr. 1138]  Gilbert recommended a conservative form of treatment, including

- 4 -

physical therapy and a cervical spine x-ray; however, if all else failed, he recommended spinal surgery.  [Tr. 1138]  On February 17, 2016, Dr. Gilbert ordered an x-ray of Moore's spine which indicated straightening of the lower cervical lordosis, anterolisthesis, fusion of C-4 and C5, bridging spondylosis at C3-C4 and C5-C6, and narrowing at C6-C7.  [Tr. 1153] On March 28, 2016, Moore followed-up with Gilbert and requested a nerve block to avoid surgery.  [Tr. 1156]  However, on August 8, 2016, Moore agreed to spinal surgery.  [Tr. 1184]

On November 9, 2016, Dr. Gilbert performed an anterior arthrodesis and exploration of an old fusion.  [Tr. 454]  Gilbert diagnosed stenosis, degenerative disk disease, spondylosis, cervical osteophytes, chronic axial instability syndrome, cervical subluxation at C4-5, neck pain, numbness, and weakness.  [Tr. 454]  Dr. Gilbert followed-up with Moore on November 22, 2016, stating that Moore was "doing remarkably well" following surgery.  As a result, his pain medications were decreased.  [Tr. 1110]  Gilbert also noted that Moore's incision was healing and there were no neurosurgical complications.  [Tr.  1110]

Dr. Gilbert conducted a further physical examination of Moore on March 18, 2019. [Tr. 1101]  Dr. Gilbert noted that Moore had "increased symptoms in his neck and back with spasms, tenderness, and decreased range of motion."  He diagnosed L3-L4 and L4-L5 stenosis, aggravation of spinal degenerative disease and anterior cervical post-op surgery, anterior protrusion at C3-C4, neck and back pain, and chronic posttraumatic pain.  [Tr. 1101]  Moore reported that he had been "doing pretty good" until he was involved in the ATV accident.  [Tr. 1101] Moore did state at the time that "his headaches [were] completely gone and his arms have gotten better," but his chronic back pain had gotten worse.  [Tr. 1101]  On June 17, 2019, Dr. Gilbert concluded that Moore was "100% occupationally disabled from any occupation without or without further surgery."  [Tr. 1249]

Leigh Ann Ford, Ph.D, conducted a consultative psychological examination on June 1, 2018. Her diagnostic impression was unspecified depressive disorder and unspecified opioid use disorder (on maintenance therapy). [Tr. 427] Ford explained that Moore's ability to understand, remember, and carry out instructions regarding simple repetitive tasks was not affected by his impairments. [Tr. 427] However, his ability to tolerate stress, the pressure of day-to-day employment, and to respond appropriately to supervision are moderately limited. [Tr. 427] Ford further found slight limitations regarding sustain attention and concentration. [Tr. 427]

State agency medical consultant, Timothy Gregg, M.D., reviewed the record on May 31, 2018, and opined that Moore's medically determinable impairments could reasonably be expected to produce his pain, but that the intensity, persistence, and limiting effects alleged were not substantiated by objective medical evidence. [Tr. 141] He concluded that Moore had the ability to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; and stand, sit, and/or walk about 6 hours in an 8-hour workday. [Tr. 142] Next, Dr. Gregg noted that Moore had limited ability to push and/or pull; he could never climb ladders, ropes, or scaffolds; he could occasionally stoop or crawl; and he could frequently balance. [Tr. 143] Gregg also concluded that Moore should not reach overhead and avoid exposure to vibration. [Tr. 143] Upon reconsideration, state agency consultant Douglas Back, M.D., reviewed the record and concluded that he found the initial state agency consultant's opinion "resolutely persuasive." [Tr. 164-65]

Psychological consultant, Michelle Bornstein, Psy.D., also reviewed the record on June 13, 2018. Based upon this review, Bornstein concluded that Moore had mild limitations to understand, remember, or apply information; interact with others; and adapt or manage

- 6 -

himself.  [Tr. 140]   Additionally, Moore had moderate limitations regarding his ability to concentrate, persist, and maintain pace.  [Tr. 140]   She concluded that Moore could interact occasionally as needed with supervisors and the public, and he had adequate capacity to respond appropriately to criticism and situational conditions.  [Tr. 146]

Moore testified during the administrative hearing before the ALJ that he suffered from lower back pain that caused numbness in his legs and that he could not turn his neck while driving.  [Tr. 95-96]   However, he testified that he was able to drive 30 miles to the administrative hearing.  [Tr. 95]   Moore also explained that the pain in his lower back commenced not long after sitting and, if he was standing or walking, he had to find a place to lean, bend over, or sit down.  [Tr. 98-99] Moore also testified regarding the accident occurring in 2016 and the resulting neck surgery which relieved some of the pain.  However, according to Moore, the 2018 ATV accident caused the pain to flare up again.  [Tr. 99-100] Additionally, Moore stated that he was often depressed.  [Tr. 103]

Moore explained that he had not looked for work in at least eight years.  Instead he helped his mother around the house and performed some yard work.  [Tr. 92-93]  Vocational Expert Randy Salmons testified that there are jobs in the national economy that a person with Moore's limitations could perform.  [Tr. 105]   Those jobs included toll collector, fast food worker, and storage facility rental clerk.  [Tr. 105]

Following the administrative hearing, ALJ Hammock issued a decision on August 30, 2019, concluding that Moore was not disabled under the Social Security Act ("Act").  [Tr. 63-86]  First, ALJ Hammock reviewed the procedural history, noting that there had been a change in the law and regulations since the previous ALJ concluded that Moore had the RFC to perform light work.  [Tr. 66-67]  Further, ALJ Hammock explained that there was "new and

material evidence that warrants a change in the residual functional capacity." She reviewed the case *de novo* with respect to the unadjudicated time period. [Tr. 67] ALJ Hammock explained that she did not adopt the previous ALJ's past relevant work finding. [Tr. 67]

ALJ Hammock proceeded to find that Moore had not engaged in substantial gainful activity since the application date of February 21, 2018. [Tr. 69] She found that Moore suffers from the following severe impairments: degenerative disc disease; degenerative joint disease of the right shoulder; chronic headaches; borderline intellectual functioning; unspecified depressive disorder; and anxiety. [Tr. 69]

Based on the evidence submitted, the ALJ concluded that Moore does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 70] ALJ Hammock explicitly considered Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), and 11.00 (Neurological disorders) in making her determination that Moore does not have an impairment or combination of impairments that met or medically equaled a Listing. [Tr. 70] She also found that "the severity of [Moore's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]istings 12.04, 12.05, and 12.06." [Tr. 71]

ALJ Hammock then concluded that Moore had the Residual Functional Capacity ("RFC") to perform "light work" with the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds, but can frequently balance. The claimant can occasionally stoop, kneel, crouch, and crawl. He can never reach overhead bilaterally. The claimant can perform simple, routine tasks. He is able to have frequent interaction with supervisors, coworkers, and the public.

[Tr. 74]  The ALJ also found that Moore had no past relevant work and transferability of job skills was not an issue because of his lack of past relevant work.  [Tr. 81]  Finally, she concluded that, based on Moore's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, including toll collector, fast food worker, and storage facility rental clerk.  [Tr. 81-82]  Therefore, he is not disabled.

## III.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. § 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the claimant has a

severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  20 C.F.R. § 416.920(e).  If he can, he is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## IV.

### a.    The Opinions of Dr. Smith and Dr. Gilbert

Moore argues that the ALJ's decision is not supported by substantial evidence because ALJ Hammock completely ignored the opinions of Dr. Smith and Dr. Gilbert.  But this

assertion is directly contradicted by the ALJ's decision.  A review of the record demonstrates that the ALJ properly considered, but rejected, the opinions of Dr. Smith and Dr. Gilbert.

Under the applicable regulations, the ALJ no longer defers or gives specific evidentiary weight to treating physician reports.  20 C.F.R. § 404.1520c(a).  Instead, the ALJ considers the following factors when reviewing medical opinions: supportability; consistency; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; examining relationship; specialization; and other factors such as the source's familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. § 404.1520c(c)(1)-(5).  The ALJ must then articulate how he or she considered the medical opinions and evaluate the persuasiveness of each source.  20 C.F.R. § 404.1520c(a)-(b).  The Court also focuses on whether a medical source provides evidence in support of a medical opinion.  20 C.F.R. 404.1527(c)(3).

Here, ALJ Hammock states that she fully considered the medical opinions and prior administrative findings in the case.  [Tr. 79]  She explained that, "[w]hile there may be some mention of treatment, symptoms, and limitations in the medical evidence of record, after a thorough review of all the medical evidence" there was a lack of "persuasive evidence that such limitations were placed on the claimant by any qualified treating medical source, and the claimed restrictions are not supported by any restrictions noted by any qualified medical source."  [Tr. 79]

ALJ Hammock explicitly considered both Dr. Smith's August 2016 and April 2019 opinions.  [Tr. 979, 1008]  But she found that the opinions had little persuasive value.  [Tr.80]  Regarding the August 2016 opinion, the ALJ explained that, "[w]hile [Dr. Smith] had the

- 11 -

opportunity to treat the claimant, this opinion was rendered approximately two years prior to the date of this decision and overstates his limitations." [Tr. 80] Further, ALJ Hammock determined that Dr. Smith's opinions were "inconsistent with the claimant's reports that he was able to perform a variety of household chores, including laundry, and sweeping, which requires some level of postural activity." [Tr. 80]

Additionally, the ALJ specifically referenced Moore's treatment with Dr. Gilbert in making her decision. She explained that Moore did suffer from "significant spinal problems prior to his application date" and underwent surgery. [Tr. 75] The ALJ also noted that Moore was being treated for back, neck, and foot pain, but told Dr. Gilbert that following his operation, "he was doing 'pretty good' until the ATV accident." [Tr. 76] She also noted that Moore saw Dr. Gilbert in January 2019 and he provided Moore with back support but informed him he would have to learn to live with some of the pain, and further surgery was not considered. [Tr. 77]

ALJ Hammock also explained that there were conclusory statements provided by his providers, including Dr. Gilbert's statement that Moore was "100% occupationally disabled." She explained that these statements go to the ultimate issue of disability, which is a decision reserved to the Commissioner and is "neither valuable nor persuasive." [Tr. 79] In accordance with 20 C.F.R. § 416.920b(c)(3), the ALJ was correct in concluding that rendering a decision on whether a plaintiff is disabled is an issue reserved for the Commissioner and that evidence is "inherently neither valuable nor persuasive." It was proper for the ALJ to reject Dr. Gilbert's conclusion that Moore was "100% occupationally disabled" because this conclusion is an issue reserved to the Commissioner and the conclusion does not provide any basis for the determination that Moore was disabled or what his limitations were.

- 12 -

b.      **Listing Impairments**

Moore contends that the ALJ erred in not finding that the combined effect of all of his impairments were of sufficient severity to meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   More specifically, Moore asserts that his neck pain, in combination with his low back pain, muscle spasms, headaches, depression, and anxiety, have the combined effect of a severe impairment.

The Act requires that all impairments, regardless of their severity, to be considered in combination.   42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R. § 404.1523.   The ALJ must determine at step three whether a claimant is eligible for benefits based on an impairment or combination of impairments that meet or medically equal a listed impairment.   To meet a Listing, the claimant "must point to specific evidence that demonstrates he could reasonably meet or equal every requirement of the [L]isting." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

ALJ Hammock concluded that Moore suffers from the following severe impairments: degenerative disc disease; degenerative joint disease of the right shoulder; chronic headaches; borderline intellectual functioning; unspecified depressive disorder; and anxiety.   She explicitly found that, while Moore has severe impairments, none of them singly or *in combination* meet or equal a Listing.   [Tr. 70 (emphasis added); *see also Reid v. Colvin*, No. 13-36-ART, 2013 U.S. Dist. LEXIS 89418, at *12-13 (E.D. Ky. June 25, 2013) (concluding that the ALJ considered the impairments in combination because the ALJ explicitly stated that his impairments were considered in combination and considered the impact of his combined impairments throughout the analysis).]   ALJ Hammock also explained that "[t]he severity of the claimant's mental impairments, considered singly and *in combination*, do not meet or

medically equal the criteria of [L]istings 12.04, 12.05, and 12.06." [Tr. 71 (emphasis)] Thus, the ALJ properly considered the impairments in combination as required by 20 C.F.R. § 404.1523.

In detailing her conclusion on the Listings, ALJ Hammock states that she considered Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), and 11.00 (Neurological disorders), before determining that Moore does not have a severe impairment that either singly or in combination meets or equals a Listing. [Tr. 70] She explained that that degenerative joint disease of Moore's right shoulder fails to meet Listing 1.02 because:

> The record . . . does not demonstrate that he has a gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints and findings on appropriate medically acceptable imaging of the joint space narrowing, bony destruction, or ankyloses of the affected joints with (B) involvement of one major peripheral joint in each upper extremity resulting in an inability to perform fine and gross movements effectively.

[Tr. 70] ALJ Hammock also concludes that Moore did not meet Listing 1.04 because "the record evidence fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory reflex loss, and positive straight leg raising in both the sitting and supine positions" and the record did not "establish spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication." [Tr. 70] Instead, the evidence reveals that Moore had a negative straight leg raise, and when he did have a positive straight leg raise it was not indicated that it was in both the "sitting and supine position, as required by the Listing." [Tr. 71] Additionally, the ALJ explains that Moore's mental impairments only create moderate limitations, but the Listings require that the defendant suffer from one extreme limitation or two marked

limitations.  [Tr. 71-73]  Finally, the ALJ concludes that Moore's borderline intellectual functioning diagnosis does not rise to the level of severity required under Listing 12.05.  [Tr. 73-74]

Similar to the ALJ in *Reid*, ALJ Hammock considered Moore's severe impairments singularly and in combination at step 3, when she was considering the Listings.  2013 U.S. Dist. LEXIS 89418 at *12-13.  Additionally, the ALJ considered the combined effect of his impairments throughout her analysis.  [Tr. 70, 75]  At step 4, ALJ Hammock explained that Moore's "combined impairments are not disabling and would not prevent him from meeting the basic demands of regular work on a sustained basis.  Rather, the record shows that the claimant is capable of performing work at the light exertional level," subject to additional limitations.  [Tr. 75]

Based on the foregoing, Moore has not shown that the ALJ erred in determining that his impairments were either singularly or in combination sufficiently severe to meet one of the Listings.

### c.      Substantial Evidence

If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Here, substantial evidence supports the Commissioner's decision.

ALJ Hammock considered Moore's severe impairments, singularly and in combination, his complaints of pain, his medical history, including multiple MRI's and

statements from his doctors, and the opinions of consultative examiners in concluding that Moore is not disabled and in and developing his RFC of light work with multiple limitations. The ALJ properly explained how she weighed the statements from Moore's doctors, the medical findings, his subjective complaints of pain, and the consultative examiners opinions in rendering her decision.  Her decision is consistent with the medical evidence and the opinions of the consultative examiners and supported by Moore's administrative hearing testimony (indicating that the claimant can perform household activities such as washing dishes, sweeping, cutting grass, and driving).  [Tr. 92-93]

Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Moore's Motion for Summary Judgment [Record No. 10] is **DENIED.**

2.      Defendant the Acting Commissioner of the Social Security's Motion for Summary Judgment [Record No. 14] is **GRANTED.**

3.      The Acting Commissioner's decision denying benefits will be **AFFIRMED** by a separate Judgment to be entered this date.

Dated:  November 17, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky